Ruben Honik, Esquire (*pro hac vice*)
David J. Stanoch, Esquire (*pro hac vice*)
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:     (215) 985-4169
Email: rhonik@golombhonik.com
        dstanoch@golombhonik.com

Jo Ann Niemi, Esquire (SBN 020873)
**ANAPOL WEISS**
8700 E. Visa Bonita Drive, Suite 268
Scottsdale, AZ 85255
Telephone: (480) 515-4745
Facsimile: (480) 515-4744
Email: jniemi@analpolweiss.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DARIA BRILL, ANDREA MORALES, and GALE ZYLSTRA, on Behalf of Themselves and All Others Similarly Situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>BANK OF AMERICA, N.A., and DOES 1-10, )<br><br>Defendants. ) | Case No. CV-16-03817-PHX-DLR<br><br>**Plaintiffs' Unopposed Motion and Incorporated Memorandum of Law For Attorneys' Fees, Costs, and Service Awards** |

### PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

**PLEASE TAKE NOTICE** that on September 14, 2017 at 9:30 a.m., or on such date as may be specified by the Court, in courtroom 506, SDOC U.S. Courthouse, 401 W. Washington St., Suite 526, Phoenix, AZ 85002-2162, Plaintiffs Jesse Krimes, on behalf of themselves and the Settlement Class, will and hereby do move for an entry of an order, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), granting the following relief:

1)      An award to Class Counsel of $105,681.10 in attorneys' fees;

2)      An award to Class Counsel of $4,318.90 in costs and other litigation expenses; and

3)      Service awards to the Class Representatives in the total amount of $7,500.00.

This motion will be heard concurrently with Plaintiff's Unopposed Motion for Final Approval of Class Action, which is separately briefed.

This motion is based on this notice; the incorporated Memorandum of Law; the attorney declaration in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs (Ex. A hereto); the Settlement Agreement (ECF 23-1); the Unopposed Motion for Final Approval and accompanying documentation (filed concurrently herewith); the declaration of the Class Notice and Settlement Administrator's personnel on the implementation of the Class Notice plan and the Claims administration process; the records in this Action; and on such further oral and documentary evidence as may be submitted, and any further evidence as the Court may receive.  Pursuant to Fed. R. Civ. P. 23(h), any objection hereto may be filed pursuant to the Court's Preliminary Approval Order on or before August 18, 2017.  Upon filing, a copy of this Motion will be posted to the settlement website, http://azdocprepaidcardsettlement.com, where it can easily be accessed by Settlement Class Members.

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ........................................................................................................ 1

II.    SUMMARY OF PROPOSED SETTLEMENT TERMS ......................................... 1

III.   CLASS COUNSEL'S UNOPPOSED REQUEST FOR ATTORNEYS'
       FEES IS  REASONABLE AND AUTHORIZED BY THE SETTLEMENT
       AGREEMENT ............................................................................................................ 2

       A.     The Unopposed Fee Request Is Authorized By The Settlement Agreement ............... 3

       B.     The Unopposed Fee Request Is Permissible Under The Common Fund Doctrine ....... 3

       C.     The Unopposed Fee Request Is Reasonable Under The Lodestar Method .................. 4

       D.     Class Counsel's Lodestar is Properly Calculated ........................................................ 5

              1.     The Number of Hours Worked is Reasonable ..................................................... 5

              2.     Class Counsel's Hourly Rates Are Reasonable ................................................... 6

       E.     The Requested Lodestar Multiplier Is Appropriate ..................................................... 8

              1.     The Kerr "Reasonableness" Factors ................................................................... 9

                     i.     Class Counsel Devoted a Substantial Amount of Time and Effort to
                            This Case on a Purely Contingent Basis, and Were Precluded From
                            Other Employment as a Result ................................................................. 10

                     ii.    This Action Involved Difficult Issues and Plaintiff's Claims
                            Entailed Considerable Risk ...................................................................... 11

                     iii.   The 'Undesirability' of the Case, and the Nature and Length of
                            Representation .......................................................................................... 12

                     iv.    The Requested Fee is Consistent with Attorneys' Fees Awarded
                            in Similar Cases ....................................................................................... 12

                     v.     A High Level of Skill Was Necessary to Perform the Legal Services
                            Properly .................................................................................................... 13

              2.     The Risk Factor ................................................................................................. 14

              3.     The Delay Factor ............................................................................................... 15

IV.    CLASS COUNSEL'S COSTS ARE REASONABLE AND WERE NECESSARILY
       INCURRED .............................................................................................................. 15

V.     THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD BE
       APPROVED .............................................................................................................. 16

VI.    CONCLUSION ........................................................................................................ 17

-iii-

_____
**Plaintiffs' Unopposed Motion and Incorporated Memorandum of Law
For Attorneys' Fees, Costs, and Service Awards**

# TABLE OF AUTHORITIES

**PAGE**

### CASES

Aguilar v. Wawona Frozen Foods,
  No. 1:1-15-cv-00093, 2017 WL 2214936 (E.D. Cal. May 19, 2017) ................................. 16, 17

Barba, et al. v. Shire US, Inc., et al.,
  No. 1:11-cv-21158 (S.D. Fla.) .......................................................................................... 8

Burke v. Ariz. State Retirement Sys.,
  206 Ariz. 269, 275, 77 P.3d 444 (App. 2003) .............................................................. 3

Burlington v. Dague,
  505 U.S. 557 (1992) .................................................................................................. 9, 15

Charles I. Friedman, P.C. v. Microsoft Corp.,
  213 Ariz. 344, 354, 141 P.3d 824 (2006) ...................................................................... 9

Counts v. Meriwether, Case
  No. 2:14-cv-00396, 2016 WL 1165888 (C.D. Cal. Mar. 9, 2016) ................................ 8

Cunningham v. Cnty. of Los Angeles,
  879 F.2d 481 (9th Cir. 1988) ......................................................................................... 5

D'Emanuele v. Montgomery Ward & Co.,
  904 F.2d 1379 (9th Cir. 1990) .................................................................................. 9, 14

Dowd v. City of Los Angeles,
  28 F. Supp. 3d 1019 (C.D. Cal. 2014) .......................................................................... 7

Facciola v. Greenberg Traurig LLP.,
  No. CV-10-1025-PHX-FJM, 2012 WL 4711894 (D. Ariz. Oct. 3, 2012) .................... 7

Fischel v. Equitable Life Assur. Soc'y of U.S.,
  307 F.3d 997 (9th Cir. 2002) ....................................................................................... 14

Friedman v. Microsoft Corp.,
  213 Ariz. 344, 141 P.2d. 824 (App. 2006) .................................................................... 3

GoDaddy.com LLC v. RPost Commc'ns Ltd.,
  No. CV14-00126-PHX-JAT, 2016 WL 4569122 (D. Ariz. Aug. 31, 2016) ................. 4

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................................... 5

-iv-

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ............................................................................................ 8

*In re Diet Drugs,*
   582 F.3d 524 (3d Cir. 2009) ............................................................................... 5

*In re Lifelock, Inc. Mktg. & Sales Pracs. Litig.,*
   MDL No. 08-1977-MHM, 2010 WL 3715138 (D. Ariz. Aug. 10, 2010) .................................. 4

*In re NASDAQ Market-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................... 9

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ............................................................................. 17

*In re OSB Antitrust Litig.,*
   Master File No. 06-826, 2008 U.S. Dist. LEXIS 125173 (E.D. Pa. Dec. 9, 2008) ............... 13

*In re Prudential Ins. Co Am. Sales Practices Litig.,*
   148 F.3d 283 (3d Cir. 1998) ............................................................................... 5

*In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
   295 F.R.D. 438 (C.D. Cal. 2014) ....................................................................... 16

*In re Washington Public Power Supply Sys. Secs. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ....................................................................... 14, 15

*Kerr v. Killian,*
   197 Ariz. 213, 217, 3 P.3d 1133 (2000) ............................................................... 4

*Kerr v. Screen Extras Guild, Inc.,*
   526 F.2d 67 (9th Cir. 1975) ............................................................................. 8

*Krimes v. JPMorgan Chase Bank, N.A.,*
   Civ. A. No. 2:15-cv-05087-ER (E.D. Pa.) ........................................................... 7

*Ladewig v. Arizona Dep't of Revenue,*
   20 Ariz. 352, 359, 63 P.3d 1089 (Tax Ct. 2003) ................................................... 9

*Maricopa Cnty. v. Office Depot, Inc.,*
   No. 2:14-cv-1372, 2017 WL 1957882 (D. Ariz. May 11, 2017) ................................... 7

*Mills v. Elec. Auto-Lite Co.,*
   396 U.S. 375 (1970) .................................................................................... 15

*Moore v. Angie's List, Inc.,*
   No. 2:15-cv-01243 (E.D. Pa. 2015) ................................................................... 7

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ........................................................................ 5

*Pierce v. County of Orange,*
   905 F. Supp. 2d 1017 (C.D. Cal. 2012) .......................................................... 7

*Reiser v. Del Monte Properties Co.,*
   605 F.2d 1135 (9th Cir. 1979) ........................................................................ 4

*Ritchie v. Van Ru Credit Corp.,*
   2014 WL 3955268 (D. Ariz. Aug. 3, 2014) .................................................. 17

*Rodriguez v. West Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 16

*Rutti v. Lojack Corp., Inc.,*
   No. SACV 06–350 DOC (JCx), 2012 WL 3151077 (C.D.Cal. July 31, 2012) ........................ 16

*Shattuck v. Precision-Toyota, Inc.,*
   115 Ariz. 586, 588, 566 P.2d 132 (1977) ........................................................ 3

*Stanger v. China Elec. Motor, Inc.,*
   812 F.3d 734 (9th Cir. 2016) .......................................................... 4, 5, 8, 14

*State of Arizona v. Marciopa Cty. Med. Soc'y,*
   578 F. Supp. 1262 (D. Ariz. 1984) ................................................................. 9

*Thomas v. City of Tacoma,*
   410 F.3d 644 (9th Cir. 2005) ......................................................................... 2

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ....................................................................... 9

*Welch v. Metro. Life Ins. Co.,*
   480 F.3d 942 (9th Cir. 2007) ......................................................................... 7

*Wing v. Asarco, Inc.,*
   114 F.3d 986 (9th Cir. 1997) ......................................................................... 3

*Winterrowd v. Am. Gen. Annuity Ins. Co.,*
   556 F.3d 815 (C.D.Cal. 2004) ....................................................................... 9

## RULES

Fed. R. Civ. P. 23(h) ...................................................................................... 4, 17

-vi-

## I.   **INTRODUCTION**

Plaintiffs have negotiated the Settlement Agreement (ECF 23-1) with Defendant Bank of America, N.A. ("BofA").  Under the Settlement, each Settlement Class Member can receive a refund of BofA fees incurred in connection with the use of debit cards issued in accordance with the Arizona Department of Corrections ("DOC") Release Card Program.  BofA has also ceased collecting BofA fees in connection with the debit card.  Thus, under the Settlement, each Settlement Class member stands to recover all BofA fees incurred on their debit cards through the date of preliminary approval, and will not incur BofA fees after that date.  This is an excellent result for the Settlement Class.  *See* Decl. of David J. Stanoch, Esq. ("Stanoch Decl.") at ¶ 32 (Ex. A hereto).  The Settlement is fair, adequate, and reasonable.  *Id.*

Plaintiffs and Class Counsel have separately moved for Final Approval of the Settlement Agreement.  Concurrently therewith, and pursuant to the Settlement Agreement, Plaintiffs and Class Counsel hereby respectively move for (i) attorneys' fee in the amount of $105,681.10 to compensate Class Counsel for their work in achieving the settlement, (ii) $4,318.90 in costs and expenses incurred in prosecuting this action, and (iii) services awards for each Class Representative in the amount of $2,500 each, or $7,500 total.  BofA does not oppose this motion.

## II.   **BACKGROUND**

Plaintiffs respectfully incorporate by reference the background set forth in their Unopposed Motion for Final Approval, filed contemporaneously herewith.

## II.   **SUMMARY OF PROPOSED SETTLEMENT TERMS**

For purposes of this Motion, Plaintiffs reiterate here that the Settlement Agreement provides for BofA to refund all BofA fees through the date of preliminary approval to the Settlement Class, to be distributed to eligible Settlement Class Members.

Apart from the money allocated to the Settlement Class, BofA is paying reasonable notice and settlement administration costs associated with the settlement.  Settlement ¶ 43.  In addition, BofA has agreed not to oppose Class Counsel's request for attorneys' fees, costs, and service awards in the aggregate amount of $117,500.  *Id.* ¶ 42. The service awards will compensate the Class Representatives for their time, effort, and risks in prosecuting this action.

Further details regarding the settlement are found in Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently herewith.

**III.    <u>CLASS COUNSEL'S UNOPPOSED REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND AUTHORIZED BY THE SETTLEMENT AGREEMENT</u>**

At the conclusion of a successful class action, class counsel may apply to a court for an award of attorneys' fees.  *See* Fed. R. Civ. P. 23(h).  The amount of an attorneys' fee award is within the district court's discretion so long as it employs the correct legal standards and makes finding of fact that are not clearly erroneous.  *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005).

As indicated in the Court-approved Notice disseminated to the Settlement Class, and consistent with standard class action practice and procedure, Plaintiffs' Class Counsel requests attorneys' fees in the amount of $105,681.10, $4,318.90 in costs, and $7,500 in service awards, to be paid exclusively by BofA and apart from the settlement payments to be made to Settlement Class Members.  *See* Settlement ¶ 42.  Here, three separate and independent bases exist for approval of Class Counsel's requested fee award:  (i)  the Settlement provides for reasonable attorneys' fees to be paid by BofA; (ii) the Court may award fees under the substantial benefit or common fund exception, and, in any event; (iii) Plaintiffs' Class Counsel's requested attorneys' fees fall within the acceptable range of fees routinely approved in this Circuit under the lodestar method.

-2-

### A.    The Unopposed Fee Request Is Authorized By The Settlement Agreement

As noted *supra*, the Settlement Agreement provides that Class Counsel will apply for an award of fees and costs up $110,000 (i.e., a request of $117,500, less the $7,500 in requested service awards), and BofA will not oppose this request.  Settlement ¶ 89.  This contractual provision permits the Court to award attorneys' fees.

In Arizona, courts may award attorneys' fees in a class action "when expressly authorized by contract or statute."  *Burke v. Ariz. State Retirement Sys.*, 206 Ariz. 269, 275, 77 P.3d 444, 450 (App. 2003).  When the parties have agreed to shift fees in a class action settlement agreement, a contractual basis exists to enforce the parties' agreement.  For instance, in *Friedman v. Microsoft Corp.*, 213 Ariz. 344, 141 P.2d. 824 (App. 2006), the court awarded attorneys' fees because "[t]he plain language of the Settlement Agreement reflect[ed] that the parties negotiated and agreed to apply a fee spreading doctrine in a fee-shifting situation."  *Id.* at 351, 141 P.3d at 831; *see also Wing v. Asarco, Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (upholding payment of attorneys' fees pursuant to settlement agreement, and applying lodestar multiplier); *Burke*, 206 Ariz. at 274-75, 77 P.3d at 449-50 (absent contract, i.e., a settlement agreement, court would not have awarded fees); *see also Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 132, 1334 (1977).  Accordingly, the Settlement Agreement gives the Court authority to award attorneys' fees, separate and apart from any other basis for a fee award.

### B.    The Unopposed Fee Request Is Permissible Under The Common Fund Doctrine

Under both Arizona and federal law, the Court has the inherent power to award attorneys' fees under the "common fund" doctrine (sometimes called the "substantial benefit" doctrine) in situations where counsel's efforts have benefited an identifiable group "who have undertaken no risk or cost [but] will nevertheless benefit."  *Kerr v. Killian*, 197 Ariz. 213, 217, 3 P.3d 1133, 1137

-3-

(2000); *see GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV14-00126-PHX-JAT, 2016 WL 4569122, at *3 (D. Ariz. Aug. 31, 2016); *In re Lifelock, Inc. Mktg. & Sales Pracs. Litig.*, MDL No. 08-1977-MHM, 2010 WL 3715138, at *8 (D. Ariz. Aug. 10, 2010).  "The purpose of the doctrine is to compensate counsel for producing such benefits[.]"  *Kerr*, 197 Ariz. at 218, 3 P.3d at 1138; *see also, e.g.*, *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1140 n.4 (9th Cir. 1979) ("[A]ttorneys' fees may be award under the common benefit exception if the plaintiff's suit is 'meritorious' and if it is the plaintiff's efforts that have caused others to benefit").

Here, the efforts of Class Counsel have resulted in substantial benefits for an ascertainable group of individuals.  The Settlement Class is receiving a refund of past BofA fees incurred, and will not be subjected to BofA fees in the future.  Given this significant relief, Class Counsel are entitled to an award of attorneys' fees pursuant to the common fund doctrine.

**C.      The Unopposed Fee Request Is Reasonable Under The Lodestar Method**

Finally, Class Counsel's requested fees are reasonable and appropriate under the lodestar method of recovery.  Attorneys' fees requests are generally assessed under one of two methods, either the percentage-of-recovery ("POR") method or the lodestar method.  *See, e.g.*, *Stanger v. China Elec. Motors, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016).  The POR method is appropriate in cases involving a common settlement fund, i.e., when a settlement contemplates one fund from which class member payments and attorneys' fees will be paid.  *See id.*  This is not a common fund case – the money available to the Settlement Class is completely separate from any award of fees to be paid by BofA.  Therefore, the POR method is inapplicable.

The lodestar method is appropriate in cases, such as this one, that do not involve a common settlement fund.  "The lodestar method is 'designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.'"  *In re Diet Drugs*, 582

-4-

F.3d 524, 540 (3d Cir. 2009) (quoting *In re Prudential Ins. Co Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).  Once calculated, the lodestar is appropriately subjected to a multiplier. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Class Counsel's fee request of $105,681.10 is reasonable under the lodestar method.

### D.       Class Counsel's Lodestar is Properly Calculated

"Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate." *Stanger*, 812 F.3d at 738.  The number of hours reasonably expended "is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The lodestar figure is "presumptively reasonable." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).  Class Counsel's hours and rates, and the lodestar multiplier, in this action are reasonable.

### 1.       The Number of Hours Worked is Reasonable

Class Counsel seeks compensation for over 227 hours spent in this action.  Stanoch Decl. ¶¶ 5, 14.  The number of hours is reasonable given the breadth of this litigation.  Since this Action's inception, Class Counsel has spent significant time and effort in prosecuting the class claims against BofA, including:

- Extensive pre-filing investigation of the claims against BofA, including multiple interviews with the class representative concerning his experiences with BofA;[1]

- Conducting legal research regarding various procedural and substantive issues;

- Researching and drafting the complaint;

---

[1] Pre-litigation services in preparation of filing the lawsuit, including background research, are compensable as part of class attorneys' fees. *See, e.g.*, *Sierra Club v. U.S. E.P.A.*, 625 F. Supp. 2d 863, 871 (N.D. Cal. 2007) ("[T]his sort of background research is often vital….").

-5-

- Reviewing and negotiating data and other information requests to BofA;

- Preparing for and participating in numerous settlement discussions with opposing counsel;

- Drafting and negotiating settlement documents, including the lengthy settlement agreement, class notice, and notice and settlement administration plan, which included an electronic claims module that made it easier for Settlement Class Members to submit claims; and

- Preparing the preliminary and final approval pleadings.

Stanoch Decl. ¶ 17.

In addition, negotiations and the exchange of information ramped up quickly and took place on a relatively compressed timeframe over the course of just a few months, which meant that the significant time and effort expended by Plaintiffs' Class Counsel on this matter was at the expense of other matters. *Id.* ¶ 22.

Plaintiffs' Class Counsel also took steps to ensure that work was distributed efficiently by, for instance, assigning designated tasks to attorneys and staff with lower biller rates when appropriate, and sought to avoid duplication of effort among timekeepers. *Id.* ¶ 19. The total number of hours of 227.3 is reasonable given the duration, progression, nature, and complexity of this litigation, and reflects the efficient management of this litigation. *Id.* at ¶ 20.

### 2.    Class Counsel's Hourly Rates Are Reasonable

At the hourly rates currently charged by Plaintiff's Class Counsel, Plaintiff's Class Counsel's pre-multiplier lodestar would be $88,835.00. Stanoch Decl. ¶¶ 5, 14. Plaintiffs' Class Counsel's rates did not vary during the pendency of this litigation.[2] In making the lodestar calculation, Plaintiffs' Class Counsel employed reasonable hourly rates.

---

[2] Even if they did, it would be appropriate to use the current rates in consideration of the deferred nature of counsel's compensation. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1675 (2010).

The reasonable hourly rate should be referenced against "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity[.]"  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (internal quotation marks omitted).  The overwhelming amount of time in this fairly novel class action case was incurred by an associate at a rate of $400, and non-attorney staff at a rate of $125.  Stanoch Decl. at ¶ 14.  These rates are consistent with rates charged by attorneys in comparable law practices in this Circuit, and in this District in particular.  *See, e.g.*, *Facciola v. Greenberg Traurig LLP*., No. CV-10-1025-PHX-FJM, 2012 WL 4711894, at *2 (D. Ariz. Oct. 3, 2012) (approving blended rate between attorneys and staff of $364 to be reasonable).  The relatively *de minimis* time spent by a founding partner and junior partner (less than 10 hours each), at rates of $750 and $450, respectively, are also within the range approved of by courts in this Circuit and District for similarly experienced attorneys.  *See, e.g.*, *Maricopa Cnty. v. Office Depot, Inc.*, No. 2:14-cv-1372, 2017 WL 1957882, at * (D. Ariz. May 11, 2017) (approving attorney hourly rates up to $801 for senior partners); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1055-56 (C.D. Cal. 2014) (finding hourly rates of $775 and below reasonable); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving rates between $625 and $850).

In addition, very recently, another district court approved the same rates here, used by the same attorneys and non-attorney staff, in a very similar litigation involving fees incurred by federal releasees in connection with their use of debit cards issued on behalf of the federal Bureau of Prisons. *See Krimes v. JPMorgan Chase Bank, N.A.*, Civ. A. No. 2:15-cv-05087-ER (E.D. Pa.), at ECF 58 (May 24, 2017) (granting final approval and fee request).  Other courts also have recently approved the same rates as those here in other class action settlements in which Golomb & Honik, P.C. also served as class counsel.  *See Moore v. Angie's List, Inc.*, No. 2:15-cv-01243 (E.D. Pa. 2015) at ECF 48 (Unopposed Motion for Attorneys' Fees, filed November 14, 2016, using same hourly rates

-7-

requested here); *id.* at ECF 55 (order granting the foregoing); *Barba, et al. v. Shire US, Inc., et al.*, No. 1:11-cv-21158 (S.D. Fla.) at ECF 430 (Unopposed Motion for Attorneys' Fees, filed Sept. 23, 2016, using same hourly rates requested here); *id.* at ECF 436 (minute entry for final approval hearing held on Nov. 10, 2016; granting request for attorneys' fees; court "found attorneys' fees reasonable").

Finally, a 2014 Survey of Hourly Billing Rates conducted by the National Law Journal shows that – three years ago – senior partner billing rates at BofA's law firm here, the prominent Snell & Wilmer firm based in this District, was $845.00 (and more senior associates' rates were $470.00). *See* 2014 NLJ Billing Survey (Ex. B hereto). The NLJ survey has been cited with approval by courts in this Circuit. *See, e.g.*, *Counts v. Meriwether*, Case No. 2:14-cv-00396, 2016 WL 1165888, at *4 (C.D. Cal. Mar. 9, 2016). Accordingly, the hourly rates of the attorneys in this litigation are reasonable.

### E.       The Requested Lodestar Multiplier Is Appropriate

The lodestar calculation is "the starting point." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After calculating the lodestar, "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stanger*, 812 F.3d at 739 (internal quotations and citation omitted) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). An additional consideration is the delay in payment class counsel endure in taking a matter, such as this one, on a purely contingent basis. *See, e.g.*, *Stanger*, 812 F.3d at 740 (failure to compensate for any delay in payment "is an abuse of discretion"). According to the United States Supreme Court, the "most critical factor" is the "degree of success obtained." *Hensley*, 461 U.S. at 436.

-8-

_____
**Plaintiffs' Unopposed Motion and Incorporated Memorandum of Law
For Attorneys' Fees, Costs, and Service Awards**

The multiplier requested here is a mere 1.19.[3]  This is well within the range of multipliers approved by courts in this District, Circuit, and State.  *See, e.g.*, *In re Lifelock*, 2010 WL 3715138, at \*9 (1.17 multiplier); *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990) (2.0 multiplier), *overruled on other grounds*, *Burlington v. Dague*, 505 U.S. 557 (1992); *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 354, 141 P.3d 824, 834 (2006) (3.42 multiplier); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (approving 3.65 multiplier while surveying class actions settlements nationwide, and noting 54 percent of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83 percent of multipliers fell within the 1.0 to 4.0 range); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (C.D.Cal. 2004) (applying multiplier of 1.25), *aff'd*, *Winterrowd*, 556 F.3d 815, 827 (9th Cir. 2009); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (using 3.97 multiplier, and noting that "[i]n recent years multipliers of between 3 and 4.5 have become common."); *Ladewig v. Arizona Dep't of Revenue*, 20 Ariz. 352, 359, 63 P.3d 1089, 1096 (Tax Ct. 2003) (6.0 multiplier); *State of Arizona v. Marciopa Cty. Med. Soc*'y, 578 F. Supp. 1262, 1279 (D. Ariz. 1984) (1.4 multiplier).[4]  All of the pertinent factors support the reasonableness of the fee request and multiplier.

### 1.   The *Kerr* "Reasonableness" Factors

The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the

---

[3] $88,835 (pre-multiplier lodestar) * ~1.19 =  $105,681.10.

[4] The fee award "need not be proportionate to an award of money damages" when, as here, fees are to be paid apart from any monetary relief made available to the settlement class.  *Gonzalez v. Germaine Law Office PLC*, No. CV 15-01427-PHX-ROS, 2016 WL 5844605, at \*1 (D. Ariz. Oct. 3, 2016) (internal quotations and citation omitted).

'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d at 70.

### i.    Class Counsel Devoted a Substantial Amount of Time and Effort to This Case on a Purely Contingent Basis, and Were Precluded From Other Employment as a Result

The first, fourth, sixth, seventh, and eighth *Kerr* factors – the time and labor involved, the preclusion of other employment, whether the fee was contingent and the time limitations imposed, and the amount of time involved and results obtained – are interrelated inquires, each supporting the reasonableness of Plaintiff's Class Counsel's fee request.

In total, Plaintiff's Class Counsel has billed over 227 hours, totaling $88,835 in pre-multiplier lodestar.   Stanoch Decl. ¶ 14.   As noted above, the hourly rates of Plaintiff's Class Counsel in this action are comparable to those awarded in other cases in this District.   Moreover, the hours billed by Class Counsel in this action are reasonable given the work involved.   *See* Stanoch Decl. ¶¶ 15, 20.

This Action demanded Plaintiff's Class Counsel to research and understand various topics. Case strategy required a significant amount of Plaintiff's Class Counsel's time and labor to develop the legal theories and arguments presented in the pleadings, including abstruse theories and arguments concerning BofA's anticipated defenses. *Id.* ¶ 30.   Further, the settlement process itself also required substantial time and labor, as Plaintiff's Class Counsel worked for many weeks with defense counsel to finalize the Settlement.   *Id.*

Plaintiff's Class Counsel's labors were not for naught.   As discussed *supra*, the Settlement represents a significant benefit to the Settlement Class.   Moreover, Plaintiff's Class Counsel's work is not yet done. Plaintiffs' Class Counsel will be required to, among other things: (1) continue to monitor the claims administration process and communicate with the Settlement Administrator,

-10-

including overseeing the Claim review process, (2) respond to class member inquiries now and for years to come; (3) prepare for and attend the Final Approval Hearing; (4) continue to oversee the Claims administration process, including addressing any Claim review issues; (5) monitor distribution of benefits to the Settlement Class; (6) and potentially handle post-judgment appeals. Stanoch Decl. ¶ 21.  Notably, Plaintiff's Class Counsel's fee request does not seek any additional funds for future work on behalf of the Settlement Class.  *Id.*

Furthermore, the time spent on the Action was time that could not be spent on litigating other matters. Stanoch Decl. ¶ 22.  Plaintiffs' firm is a relatively small firm with a very busy practice. Plaintiffs' Class Counsel were required to forego other opportunities to properly prosecute this Action.  *Id.*  The settlement discussions ramped up quickly and took place on a relatively compressed timeframe over the course of just a few months, which meant that the significant time and effort expended by Plaintiff's Class Counsel on this matter was at the expense of other matters.  *Id.*

Plaintiffs' Class Counsel litigated this case wholly on a contingency fee basis, and did so at great risk of never receiving any compensation.  *Id.*  In effect, Plaintiffs' Class Counsel has advanced their legal services to the Settlement Class since that time.

Finally, as to the "degree of success obtained," which the Supreme Court has identified as the "most critical factor," *see Hensley*, 461 U.S. at 436, the monetary relief (i.e., full refund of BofA fees) and prospective relief (cessation of collection of BofA fees going forward) is significant by any measure.

These factors strongly militate in favor of the requested fee.

### ii.    This Action Involved Difficult Issues and Plaintiff's Claims Entailed Considerable Risk

Concerning the second *Kerr* factor – the novelty or difficulty of the issues raised in the litigation and the "undesirability" of the case – although Plaintiffs' Class Counsel were able to

-11-

achieve fair, adequate and reasonable relief for the Settlement Class in this case, the relief obtained cannot be viewed in a vacuum.  Plaintiffs' Class Counsel's litigation of the class claims has been fraught with risk since inception of this matter, evidence by the fact that no one has sought to challenge the alleged practices since the DOC's program commenced many years ago.  While Plaintiffs' Class Counsel are confident in the strength of the Plaintiffs' claims, they are also pragmatic that there is no guarantee of success and that substantial obstacles exist at the class certification, summary judgment, and trial phases. Stanoch Decl. ¶¶ 23-24. Finally, even if Plaintiffs obtained a favorable jury verdict, an appeal would be likely, which would create new risks and years of delay. *See id.* ¶ 29.

### iii.   The 'Undesirability' of the Case, and the Nature and Length of Representation

The tenth and eleventh factors – the "undesirability" of the case, and the nature and lengthy of Class Counsel's representation of the Plaintiffs – further demonstrate the reasonableness of the fee request.  It is difficult to say this was a "desirable" case.  No one stepped forward to represent the Settlement Class here until many years after the DOC's program was first instituted many years ago.  It was not until Plaintiffs' Class Counsel were engaged by Plaintiffs, on a purely contingency fee basis, that the alleged practices were ever challenged.  Arguably, a stigma might even be said to attach to this litigation, given Plaintiffs' and Settlement Class members' statuses as releasees. Notwithstanding that, Plaintiffs' Class Counsel has ably represented Plaintiffs for nearly a year in this litigation.

### iv.   The Requested Fee is Consistent with Attorneys' Fees Awarded in Similar Cases

The fifth and twelfth factors – the customary fee and awards in similar cases, respectively – also support a finding that the unopposed fee request is reasonable.

-12-

As noted *supra* Parts D & E, the requested fee, based on a presumptively reasonable lodestar calculation with a very slight multiplier, falls squarely within the range of awards made in numerous cases brought in this Circuit and District.  It also is consistent with the range approved by the court in *Krimes*, a very similar case also handled by Plaintiffs' Class Counsel.

### v. A High Level of Skill Was Necessary to Perform the Legal Services Properly

The remaining *Kerr* factors – the skill required to perform the legal services properly (factor three) and the experience, reputation, and ability of the attorneys (factor nine) – confirm that the requested fee is reasonable.

Plaintiffs' Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. Stanoch Decl. ¶¶ 9-13.  Plaintiffs' Class Counsel regularly engage in major complex litigation involving consumer class actions, and have been appointed class counsel by courts throughout the country.  *Id.* ¶ 9. Plaintiff's Class Counsel's skill came into play in developing and litigating the application of traditional legal theories in the context of the debit cards at issue, and the interrelationship between the DOC, BofA, and Settlement Class Members. *Id.* ¶ 30.

Moreover, Plaintiffs' Class Counsel thoroughly investigated Plaintiffs' claims and made skillful use of documents and information to assess BofA's potential exposure as to the claims at issue. *Id.* ¶ 31.  With this information, Plaintiffs' Class Counsel developed theories of liability and damages that ultimately led to a very successful result – the return of all BofA fees.  *Id.*

Also, the skill and competence of BofA's lawyers should be considered and cannot be doubted.  *See, e.g.*, *In re OSB Antitrust Litig.*, Master File No. 06-826, 2008 U.S. Dist. LEXIS 125173, at *13-14 (E.D. Pa. Dec. 9, 2008) (in assessing quality of representation, courts also look to "the performance and quality of opposing counsel") (internal quotations and citation omitted).

-13-

BofA is represented by Snell & Wilmer, a full-service law firm – and one of the largest law firms in the western United States, with more than 400 attorneys operating in nine locations in the United States and Mexico.  *See* https://www.swlaw.com/the-firm.  There is little doubt that BofA's law firm possesses the resources, reputation, and experience to vigorously and effectively advocate BofA's interests were this matter to be litigated further.  Stanoch Decl. ¶ 32.

**2.      The Risk Factor**

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *In re Washington Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  "Risk multipliers incentivize attorneys to represent class clients, who might otherwise by denied access to counsel, on a contingency basis."  *Stanger*, 812 F.3d at 741.  Courts "must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.  Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion.'"  *Stanger*, 812 F.3d at 741 (quoting *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002)) (intervening citation omitted).

This was a risky case.  No one had challenged the alleged practices since their inception many years ago.  The legal landscape for challenges of this kind is unsettled.  Plaintiffs themselves did not have the means to compensate Class Counsel, and would be denied access to counsel but for Plaintiffs' Class Counsel's efforts on their behalves on a contingency fee basis.  *See Stanger*, 812 F.3d at 741.  This is especially true here, given the stigma that may attach to Plaintiffs on account of their status as releasees.  Given these circumstances, the riskiness of this litigation justifies the slight multiplier.  *See, e.g.*, *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990) (finding risk multiplier appropriate to ensure attorneys accept 'undesirable' contingency fee

-14-

cases, and remanding with instructions to apply a 2.0 multiplier to the lodestar figure), *overruled on other grounds*, *Burlington v. Dague*, 505 U.S. 557 (1992).

### 3.   The Delay Factor

The Ninth Circuit has recognized that attorneys should be compensated for any delay in payment as a result of litigating a matter on a contingency fee basis:  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *In re Washington Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  "The district court may choose one of two methods to compensate attorneys for a delay in payment: (1) the court may apply the attorneys' current rates to all hours billed during the course of the litigation; or (2) the court may use the attorneys' historical rates and add a prime rate enhancement."  *Stanger*, 821 F.2d at 740 (internal and citation quotations omitted).  Here, Plaintiffs' Class Counsel's billing rates were the same throughout the pendency of this litigation.  Thus, were the Court inclined to ascribe any weight to the requested lodestar multiplier for the delay factor, it would be appropriate to consider the delay-in-payment metric (i.e., the second method identified in *Stanger*).

## IV.   CLASS COUNSEL'S COSTS ARE REASONABLE AND WERE NECESSARILY INCURRED

Plaintiff's Class Counsel also request reimbursement for a total of $4,318.90 in certain litigation costs and expenses.  Stanoch Decl. ¶ 35; *see Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).  This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of this litigation and the Settlement.  Stanoch Decl. ¶ 16.  Such costs are compensable in a class action.  *See* Fed. R. Civ. P. 23(h) (permitting award of "nontaxable costs that are authorized by law or by the parties' agreement").

-15-

The categories of expenses for which Plaintiff's Class Counsel seek reimbursement here are the type of expenses routinely charged to paying clients in the marketplace and, therefore, the full requested amount should be reimbursed.  *See* Stanoch Decl. ¶ 16. These expenses include but are not limited to: filing and service fees; photocopies; mediation fees; travel expenses, and research fees.  *Id.*  These expenses are reasonable and justified.  *See, e.g., Rutti v. Lojack Corp., Inc.*, No. SACV 06–350 DOC (JCx), 2012 WL 3151077, *12 (C.D.Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."); *see also, e.g., Aguilar v. Wawona Frozen Foods*, No. 1:1-15-cv-00093, 2017 WL 2214936, at *7 (E.D. Cal. May 19, 2017); *In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014).

## V.   THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED

Service awards "are fairly typical in class action cases."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  They are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* Service awards "are particularly appropriate" when a named plaintiff undertakes a "reputational risk" in bringing a lawsuit.  *See, e.g., Aguilar*, 2017 WL 2214936, at *7 (discussing such risk in context of wage-and-hour action).

The service awards requested for Plaintiffs, in the amount of $2,500 each, are reasonable and appropriate.  Each Plaintiff committed time and effort to this litigation, and bore the risks involved in prosecuting it.  *See* Exs. C-E; *see also* Stanoch Decl. ¶¶ 34-36.  Each Plaintiff spent hours meeting, communicating, or otherwise working with Plaintiffs' Class Counsel.  *Id.* ¶ 35.

Plaintiffs undertook the risk of publicizing their statuses as former inmates, which, in spite of the result they were able to achieve on behalf of themselves and others through this litigation, was a serious reputational risk that has adversely affected their lives and employment opportunities.  *See id.*  There is little doubt, though, that Plaintiffs' efforts, and willingness to come forward to represent others, has greatly benefit the class.

The Notice informed Settlement Class Members about the amount of each service award. Not a single Settlement Class Member has objected to the service award (or to any other aspect of the Settlement for that matter, including the requested attorneys' fees and costs).  The aggregate $7,500 in service awards is to be paid separately from the monetary relief available to the Settlement Class, and represents a tiny fraction of the estimated monetary relief available to the Settlement Class.  The awards also fall well within the range approved in other cases. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-93 (9th Cir. 2015) (affirming $5,000 service awards for each class representative); *Aguilar*, 2017 WL 2219436, at *8 (approving $7,500 service award for each class representative); *Ritchie v. Van Ru Credit Corp.,* No. CV-12-1714 PHX-SMM 2014 WL 3955268, at *3 (D.Ariz. Aug. 3, 2014) (approving $12,000 service award).

## VI.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant this Unopposed Motion for Attorneys' Fees, Costs, and Service Awards.

**Dated:  July 28, 2017**                              **BY:**

                                                         */s/ David J. Stanoch*
                                                         Ruben Honik, Esquire (*pro hac vice*)
                                                         David J. Stanoch, Esquire  (*pro hac vice*)
                                                         **GOLOMB & HONIK, P.C.**
                                                         1515 Market Street, Suite 1100
                                                         Philadelphia, PA 19102
                                                         Phone: (215) 985-9177
                                                         Fax:    (215) 985-4169
                                                         Email: rhonik@golombhonik.com
                                                                    dstanoch@golombhonik.com

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Jo Ann Niemi, Esquire
**ANAPOL WEISS**
8700 E. Visa Bonita Drive, Suite 268
Scottsdale, AZ 85255
Telephone: (480) 515-4745
Facsimile: (480) 515-4744
Email: jniemi@analpolweiss.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, David J. Stanoch, Esquire, hereby certify that on this **28th** day of **July, 2017**, a copy of the foregoing Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards was filed and served upon all counsel via operation of the Court's CM/ECF system.


*/s/ David J. Stanoch*
**David J. Stanoch, Esquire**

-19-